**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

PEGASUS WIRELESS INNOVATION LLC,

       Plaintiff,

  v.

VERIZON COMMUNICATIONS INC.,
CELLCO PARTNERSHIP D/B/A VERIZON
WIRELESS, VERIZON BUSINESS
NETWORK SERVICES LLC, VERIZON
CORPORATE SERVICES GROUP INC., and
TRACFONE WIRELESS, INC.

       Defendants.

Civil Action No. _____

PATENT CASE

**JURY TRIAL DEMANDED**

## COMPLAINT FOR PATENT INFRINGEMENT

This is an action for patent infringement in which plaintiff Pegasus Wireless Innovation LLC ("Pegasus"), makes the following allegations against defendants Verizon Communications, Inc., Cellco Partnership d/b/a Verizon Wireless, Verizon Business Network Services LLC, Verizon Corporate Services Group Inc., and TracFone Wireless, Inc. (collectively "Verizon").

### BACKGROUND

1.    This Complaint asserts causes of action for infringement of the following United States Patents owned by Pegasus: United States Patent Nos. 10,925,079 ("'079 Patent"), 11,569,958 ("'958 Patent"), 10,897,720 ("'720 Patent"), 10,791,530 ("'530 Patent"), and 11,671,218 ("'218 Patent") (collectively, the "Asserted Patents").

2.    The Asserted Patents were invented by researchers at KT Corporation ("KT"). KT and Pegasus entered into an "Exclusive License Agreement," and KT transferred to Pegasus all

substantial rights in the Asserted Patents. The Asserted Patents are fundamental to a variety of core technologies relating to wireless telecommunications.

3.    KT is a leading provider of mobile voice and data telecommunications, fixed-line telephone services, broadband internet access services, and media and content services. KT was the first provider in the world to launch a commercially available 5G network.

4.    KT has invested heavily in research and development to advance and improve telecommunication technology, including the implementation of fourth-generation/Long Term Evolution ("4G/LTE") and fifth-generation ("5G") technologies—the technologies at issue in this case. KT spends roughly $150 million annually on research and development and invests even more supporting its thousands of research engineers, who have made important contributions researching, developing, inventing, and standardizing critical telecommunications technologies. As a result, KT has developed one of the industry's strongest intellectual property portfolios, which includes more than 3,000 patents and patent applications worldwide that relate to wireless technology.

5.    KT has actively contributed to the development of advanced telecommunications platforms including 4G/LTE and 5G. KT participated in dozens of meetings with standard-setting organizations to help standardize wireless technology, including 4G/LTE and 5G. KT has declared over 720 patent families as essential to wireless telecommunications standards to the European Telecommunications Standards Institute ("ETSI").

6.    Before filing this Complaint, Pegasus repeatedly provided Verizon with notice of the Asserted Patents. Pegasus made a fair, reasonable, and non-discriminatory offer to Verizon, but Verizon did not respond with a counteroffer.

7.      Pegasus brings this suit against Verizon seeking the Court's protection of its valuable intellectual property rights.

## THE PARTIES

8.      Plaintiff Pegasus Wireless Innovation LLC is a limited liability company organized and existing under the laws of Virginia, with its principal place of business at 20319 Kiawah Island Drive, Ashburn, Virginia 20147.

9.      Defendant Verizon Communications Inc. ("Verizon Communications") is a Delaware corporation with a principal place of business at 1095 Avenue of the Americas, New York, New York 10036.

10.      Defendant Cellco Partnership d/b/a Verizon Wireless ("Cellco Partnership") is a Delaware partnership with its principal place of business at One Verizon Way, Basking Ridge, New Jersey 07920.

11.      Defendant Verizon Business Network Services LLC ("Verizon Business Network") is a limited liability company organized and existing under the laws of the State of Delaware, with a principal place of business at 22001 Loudoun County Parkway, Ashburn, Virginia 20147.

12.      Defendant Verizon Corporate Services Group Inc. ("Verizon Corporate Services") is a corporation organized and existing under the laws of the State of New York, with a principal place of business at One Verizon Way, Basking Ridge, New Jersey 07920.

13.      Defendant TracFone Wireless, Inc. ("TracFone") is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 9700 Northwest 112th Avenue, Miami, Florida 33178.

14.      Verizon is doing business, either directly or acting through its agents or agent subsidiaries, on an ongoing basis in this judicial district and elsewhere in the United States, and

has a regular and established place of business in this judicial district. Verizon Communications, Cellco Partnership, Verizon Business Network, and TracFone can be served with process through their registered agent, The Corporation Trust Center, 1209 Orange Street, City of Wilmington, County of New Castle, Delaware 19808. Verizon Corporate Services can be served with process through its registered agent, CT Corporation System, 28 Liberty Street, New York, New York 10005.

## JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*

16.    This Court has personal jurisdiction over Verizon because, among other things, Verizon has minimum contacts with Texas and this district such that this venue is a fair and reasonable one. Verizon conducts substantial business in this forum, including (i) engaging in the infringing conduct alleged below and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this district. This cause of action arises, at least in part, from Verizon's contacts with and activities in the Eastern District of Texas and the State of Texas.

17.    Venue in the Eastern District of Texas is proper under 28 U.S.C. §§ 1391(b) and (c) and 1400(b).

18.    Upon information and belief, Verizon has committed infringing acts in this judicial district by making, using, offering for sale, selling, or importing products or services that infringe the Asserted Patents (as defined above), or by inducing others to infringe the Asserted Patents. On information and belief, Verizon maintains a "regular and established" place of business in this district, including by (a) maintaining or controlling retail stores in this district, (b) maintaining and operating infringing base stations in this district, including on cellular towers and other installation

sites owned or leased by them, and (c) maintaining and operating other places of business in this district, including those where research, development, or sales are conducted, where customer service is provided, or where repairs are made.

19.    Upon information and belief, Verizon has a regular and established physical presence in the district, including but not limited to, ownership of or control over property, inventory, or infrastructure. Verizon's website (https://www.verizon.com/stores/) displays information for retail stores located at 1006 E. End Blvd N, Marshall, TX, 75670; 500 E Loop 281, Longview, TX, 75605; 3902 St. Michael Dr., Texarkana, Texas 75503; 404 Walton, Texarkana, Texas 75501; 1016 W. Southwest Loop 323, Tyler, Texas 75701; 6874 S Broadway Ave., Tyler, Texas 75703; and 3816 State Highway 64 W, Tyler, Texas 75704 (among others), all of which lie within this federal judicial district. Additionally, Total by Verizon's website (https://www.totalbyverizon.com/stores/) displays information for a retail store located at 2765 Washington Boulevard, Beaumont, Texas 77705 (among others), which lies within this federal judicial district.

20.    Verizon is registered to do business in the State of Texas.

21.    Upon information and belief, Verizon also has offices, including offices for its network technology and planning group, within this federal judicial district, including, for example, an office in Plano, Texas.

22.    In other recent actions, Verizon has either admitted or not contested that this federal judicial district is a proper venue for patent infringement actions against it. *See, e.g.*, Answer at ¶ 17, *Pegasus Wireless Innovation LLC v. Cellco P'ship d/b/a Verizon Wireless et al.*, No. 2:23-cv-00640 (E.D. Tex. Mar. 25, 2024), ECF No. 36; Answer at ¶ 16 & Counterclaims at ¶ 6, *IPCom, Gmbh & Co. KG v. Verizon Comm'ns Inc., et al.*, No. 2:20-cv-322 (E.D. Tex. Dec. 21, 2020), ECF

No. 23; Am. Answer to Am. Compl. ¶¶ 14, 17, *Sol IP v. Verizon Comm'ns Inc., et al.*, No. 2:18-cv-526 (E.D. Tex. Sept. 18, 2019), ECF No. 180; Answer at ¶ 15, *Cellular Commc'ns Equip., LLC v. Apple Inc., et al.*, No. 6:17-cv-146 (E.D. Tex. June 29, 2017), ECF No. 44; Answer at ¶ 6, *Traxcell Techs., LLC v. Verizon Commc'ns, Inc., et al.*, No. 2:17-cv-721 (E.D. Tex. Jan. 22, 2018), ECF No. 8. Defendant Cellco Partnership has also admitted or failed to contest that it has transacted business in this district. *See, e.g.*, *Sol IP*, Am. Answer to Am. Compl. ¶¶ 13, 16; *Cellular Commc'ns*, Answer ¶¶ 6, 16; Answer at ¶ 7, *Plectrum LLC v. Verizon Commc'ns Inc., et al.*, No. 4:17-cv-126 (E.D. Tex. Apr. 19, 2017), ECF No. 21.

23.    Verizon derives benefits from its presence in this federal judicial district, including, but not limited to, sales revenue and serving customers using its mobile network in this district. For example, Verizon receives revenue from its corporate stores in this district, by selling network access, phones/products, and services, and by receiving payment for network access, phones/products, and services.

## ACCUSED STANDARDS AND INSTRUMENTALITIES

24.    The Third Generation Partnership Project ("3GPP") is an organization that maintains and develops globally applicable technical specifications for cellular telecommunications technologies, including the specifications for implementation and use of mobile wireless communications for high-speed data referred to as the 4G/LTE and 5G Standards. Organizational partners of 3GPP include standard-development organizations from around the world, including (among others) the Alliance for Telecommunications Industry Solutions ("ATIS"), which represents North America in 3GPP, the European Telecommunications Standards Institute ("ETSI"), which represents Europe in 3GPP, and the Telecommunications Technology Association ("TTA"), which represents Korea in 3GPP.

25.    Implementation and use of the 4G/LTE and 5G Standards, including but not limited to use of wireless communications products and services compliant with the 4G/LTE and 5G specifications as detailed in various 3GPP technical specification series, has increased in recent years and continues to increase at a rapid pace.

26.    3GPP uses a system of "releases" to provide developers with a stable platform for the implementation of features. 3GPP makes its technical specifications available through the 3GPP website, including Releases 8–19, which outline the 4G/LTE Standards and/or 5G Standards. In North America, ATIS publishes the same standards with an ATIS cover page. Accordingly, references to 3GPP technical specifications in this Complaint should be understood to include the corresponding ATIS documents. Each new release improves upon past releases and provides new standardized functionalities. Release 8 was the basis for the deployment of the standard technology known as 4G/LTE. Subsequent enhancements were incorporated into the 4G/LTE standards in later releases. Release 10, which includes the technology of Release 8, was the basis for the deployment of an advanced form of 4G/LTE called LTE-Advanced ("LTE-A"). Releases 9, 11, 12, 13, and 14 included important updates to the 4G/LTE and LTE-A standards.

27.    Release 15 introduced the first full set of 5G standards and was the basis for deploying the entire suite of 5G functionalities. Release 16 introduced additional 5G functionalities, including enhancements to many aspects of the 5G system, such as coverage, capacity, latency, power, mobility, reliability, and ease of deployment. Release 17 further enhanced 5G's technological foundations and broadened 5G's reach to new use cases, deployments, and network topologies. Release 18, with additional improvements called 5G-Advanced, has entered frozen status within 3GPP, and work on future Release 19 pertaining to more advanced 5G and 6G technologies is ongoing.

## KT CONTRIBUTIONS TO WIRELESS TECHNOLOGY

28.    Founded in 1981, KT has served Korea and the world as a leading provider of mobile voice and data telecommunications, fixed-line telephone services, broadband internet access, and media and content services. Before 1991, KT was the sole provider of local, domestic long-distance, and international long-distance telephone services in Korea. KT continues to serve Korea and the world as a leading provider of mobile voice and data telecommunications, fixed-line telephone services, broadband internet access services, and media and content services.[1]

29.    KT is committed to investing in research and development to advance and improve telecommunication technology, including the implementation of 5G technologies. From 2021 to 2023, KT invested over $467 million in research and development.[2] This $467 million does not include KT's compensation to its thousands of research engineers.

30.    In March 2015, KT's Chairman Hwang Chang-Gyu delivered a keynote address titled "5G and Beyond, Accelerating the Future," at the 2015 Mobile World Congress in Barcelona, Spain announcing KT's "5G Vision."[3] During his address, Chairman Hwang proclaimed, "In the era of the Internet of Things (IoT), where all devices are connected through a network, an ultra large 5G network with real-time hyper speed is a must."[4]

---

[1] KT Corporation, Annual Report (Form 20-F), at 20–22 (Apr. 30, 2024).

[2] KT Corporation, Annual Report (Form 20-F), at 47–48 (Apr. 30, 2024).

[3] *5G Vision*, KT Corporation, https://m.corp.kt.com/eng/html/biz/services/vision.html (last visited Mar. 7, 2025); Ji-young, Sohn, *KT Shows Off Futuristic 5G Technologies at MWC*, The Korea Herald (Mar. 6, 2015), https://www.koreaherald.com/view.php?ud=20150306000357 (last visited Mar. 7, 2025).

[4] *KT CEO Hwang Chang-Gyu, The Only CEO in the Asia Region, Gives Keynote Speech at the MWC*, Netmanias (Mar. 4, 2015), https://www.netmanias.com/en/post/korea_ict_news/7338/5g-iot-kt-mwc-2015/kt-ceo-hwang-chang-gyu-the-only-ceo-in-the-asia-region-gives-keynote-speech-at-the-mwc (last visited Mar. 7, 2025).

31.    In July 2015, KT, in collaboration with 6 global mobile vendors, opened its 5G R&D Center in the Woomyon Research Center in Seoul, Korea, "to take the lead in development of 5G ecosystem around the world."[5]

32.    During the 2018 Winter Olympics in PyongChang, Korea, KT led the world's first broad-scale trial of 5G technology powered by KT's mobile network. For example, multiple 5G-connected cameras were placed along the cross-country course in Alpensia capturing skiers as they traveled along their path and transmitting the high-resolution video over KT's Olympic 5G network at gigabit speeds.[6]

33.    On April 3, 2019, KT launched the first commercially available 5G network in the world.[7]

---

[5] *KT Opened 5G R&D Center with 6 Global Mobile Vendors*, Netmanias (July 16, 2015), https://www.netmanias.com/en/post/korea_ict_news/7682/5g-kt-korea/kt-opened-5g-r-d-center-with-6-global-mobile-vendors (last visited Mar. 7, 2025).

[6] *Fans of the Olympic Winter Games 2018 to Experience World's First Broad-scale 5G Network*, International Olympic Committee (Feb. 9, 2018), https://olympics.com/ioc/news/fans-of-the-olympic-winter-games-2018-to-experience-world-s-first-broad-scale-5g-network (last visited Mar. 7, 2025); *KT Showcases 5G Innovation at the Olympics in PyeongChang*, International Telecommunications Union (Apr. 29, 2020), https://www.itu.int/hub/2020/04/kt-showcases-5g-innovation-at-the-olympics-in-pyeongchang (last visited Mar. 7, 2025).

[7] KT Corporation, *KT Launches World's First Commercial 5G Network*, Cision US (Apr. 11, 2019), https://www.prnewswire.com/news-releases/kt-launches-worlds-first-commercial-5g-network-300830635.html (last visited Mar. 7, 2025). AT&T and Verizon claimed to launch 5G networks before KT, but AT&T's network was only available in 12 cities via a mobile hotspot (not on a 5G mobile phone), and Verizon's network launched in only 2 cities after KT launched its 5G network. *See* Reuters, *Who was first to launch 5G? Depends who you ask* (Apr. 5, 2019), available at https://www.reuters.com/article/us-telecoms-5g/who-was-first-to-launch-5g-depends-who-you-ask-idUSKCN1RH1V1 (last visited Mar. 7, 2025).

34.     KT was actively involved in helping standard-setting organizations develop a range of essential 4G and 5G technology. For example, KT participated in many 3GPP meetings related to RAN 1, RAN 2, and RAN 3 technology.[8]

| Meeting Info. | Title | contributors |
|---|---|---|
| 3GPP RAN2#78 | Discussion on continuing ROHC context after handover | Samsung, Alcatel-Lucent, KDDI, KT Corp., LGU+, SK Telecom |
| 3GPP RAN2#78 | Draft CR to 36.323 to support ROHC context continue | Samsung, Alcatel-Lucent, KDDI, KT Corp., LGU+, SK Telecom |
| 3GPP RAN2#78 | Draft CR to 36.331 to support ROHC context continue | Samsung, Alcatel-Lucent, KDDI, KT Corp., LGU+, SK Telecom |
| 3GPP RAN2#78 | Discussion on continuing ROHC context after handover | Samsung, Alcatel-Lucent, KT Corp., LGU+, Nokia Siemens Networks |
| 3GPP RAN2#78 | Draft CR to 36.323 to support ROHC context continue | Samsung, Alcatel-Lucent, KT Corp., LGU+, Nokia Siemens Networks |
| 3GPP RAN2#78 | Draft CR to 36.331 to support ROHC context continue | Samsung, Alcatel-Lucent, KT Corp., LGU+, Nokia Siemens Networks |

| Meeting Info. | Title | contributors |
|---|---|---|
| 3GPP RAN3#92 | Motivation for standard interface between central and distributed units | NTT DOCOMO, INC., KT Corp, Softbank, TIM, Verizon, SKT, Deutsche Telekom, CMCC |
| 3GPP RAN3#92 | Motivation for standard interface between central and distributed units | NTT DOCOMO, INC., KT Corp, Softbank, TIM, Verizon, SKT, Deutsche Telekom, CMCC, AT&T |
| 3GPP RAN3#93 | C-plane and U-plane separation of NR RAN | Intel Corporation, KT Corp., Deutsche Telekom, AT&T, Samsung, Telecom Italia |
| 3GPP RAN3#93 | NR RAN internal functional split and interface | KT Corp |
| 3GPP RAN3#93 | Fronthaul transport network aspects | Intel Corporation, KT Corp |
| 3GPP RAN3#93bis | Consideration for NR RAN internal interface for higher layer functional split | KT Corp |

35.     KT holds more than 3,000 worldwide patents and patent applications related to wireless technology. As a member of ETSI and 3GPP, KT has declared 721 patent families to be essential to the 4G/LTE and/or 5G standards. As detailed in Counts One through Five below, the Asserted Patents were incorporated into and are essential to the 4G/LTE and 5G standards.

36.     Verizon is a 3GPP member organization or is affiliated with a 3GPP member organization. 3GPP solicits identification of standard-essential patents and, through 3GPP, Verizon received notice of the standard-essential patents at issue here, including the Asserted Patents, when they were disclosed to 3GPP via its organizational partners, including ETSI.

**DEFENDANTS' MOBILE NETWORK AND DEVICE OFFERINGS**

37.     Verizon operates and sells access to a mobile network that provides telecommunication, Internet, and other services to customers via cellular base stations located in

---

[8] 3GPP Meetings for Group R1, https://www.3gpp.org/dynareport?code=Meetings-R1.htm (last visited Mar. 7, 2025).

this district and throughout the United States (the "Verizon Base Stations"). The Verizon Base Stations employ technology that infringes the Asserted Patents by operating in accordance with 3GPP 4G/LTE and 5G standards, including Releases 8–15.

38.    Verizon's mobile network, including the Verizon Base Stations, infringes the Asserted Patents by communicating with customers' mobile devices (also referred to as "terminals" or "user equipment"), such as mobile phones, smartphones, tablets, and mobile hotspots, in accordance with 4G/LTE and/or 5G mobile network standards. Verizon also sells mobile devices, through channels including its website and retail stores, that infringe the Asserted Patents by communicating in accordance with those 4G/LTE and/or 5G Standards for use on its network. For the avoidance of any doubt, vehicles, smart utility meters, and/or aftermarket devices meant to be installed and/or used primarily in or on a vehicle that provide wireless connectivity that incorporate one or more of the 4G/LTE and/or 5G Standards, to the extent that Verizon sells or uses them, are not Accused Instrumentalities for purposes of this Complaint.

39.    In public documents, Verizon states that it has a market-leading 4G/LTE and 5G mobile network, meaning that the network communicates in accordance with, at a minimum, 3GPP Releases 8–15, thereby infringing the Asserted Patents. According to Verizon's website, Verizon's "4G LTE network covers more than 99% of the U.S. population."[9] Verizon touts that "Verizon's ultra-fast, reliable 5G Ultra Wideband service is now available to more than 200 million people, or roughly two out of every three Americans."[10] Verizon's website also states that its "spectrum position, our extensive fiber ownership and the advanced technology we deploy from the core of

---

[9] Verizon, Coverage Map, https://www.verizon.com/coverage-map/ (last visited Mar. 7, 2025).

[10] Karen Schulz, Mar. 7, 2023, "Verizon's 5G Ultra Wideband now reaches 200 million people," https://www.verizon.com/about/news/verizons-5g-ultra-wideband-now-reaches-200-million-people (last visited Mar. 7, 2025).

our network all the way to the edge of our network makes Verizon's 5G network reliable, robust, secure and high performing. And that makes us America's most reliable 5G network."[11]

40.     Verizon's 2024 10-K states that Verizon has focused on expanding and densifying its 4G/LTE and 5G networks: "We continue to improve 5G wireless service coverage by leveraging our breadth of wireless spectrum, including millimeter wave and C-Band spectrum, which we are continuing to deploy across the continental U.S. We are densifying our networks by utilizing macro and small cell technology, in-building solutions and distributed antenna systems. Network densification enables us to increase coverage, improve quality of service and add capacity to accommodate an increasing number of users. It also supports our growing FWA business and growing bandwidth needs for uses such as streaming and video content creation."[12]

41.     Verizon further infringes the Asserted Patents on its website by encouraging prospective customers and visitors to "Get the 5G network that powers your day."[13] Verizon encourages its customers to move to 5G because "5G is the next stage in network evolution. Verizon 5G is available in over 2700 cities, performs like 4G LTE and is improving. And with 5G Ultra Wideband, which is available in over 1700 cities, you can get speeds up to 10x faster than

---

[11] Verizon, *5G*, https://www.verizon.com/about/our-company/5g (last visited Mar. 7, 2025).

[12] Verizon Communications, Inc., United States Securities and Exchange Commission Form 10-K (Feb, 12, 2025) [hereinafter "Verizon 2024 10-K"], available at https://quotes.quotemedia.com/data/downloadFiling?webmasterId=104600&ref=318909556&type=HTML&formType=S-4%2FA&formDescription=%5BAmend%5D+Registration+of+securities%2C+business+combinations&dateFiled=2025-02-19&cik=0000732712 (last visited Mar. 7, 2025).

[13] Verizon, *5G*, https://www.verizon.com/5g (last visited Mar. 7, 2025).

what you have now and your downloads take a fraction of the time – get a movie in minutes, or a song in seconds."[14]

42.    Verizon also uses its website to advertise the infringing methods of its mobile network to actual and potential U.S. customers. Verizon's website advertises mobile devices identified as supporting 4G/LTE and 5G, meaning that they communicate in accordance with, at a minimum, 3GPP Releases 8–15. These devices include, but not necessarily limited to, the Google Pixel 6, Google Pixel 6 Pro, Google Pixel 6a, Google Pixel 7, Google Pixel 7 Pro, Kyocera DuraForce Ultra 5G, Kyocera DuraSport 5G UW, Motorola edge - 2022, Motorola edge 5G UW, Motorola edge+ 5G UW, Motorola moto g stylus 5G, Motorola one 5G UW ace, Nokia 8 V 5G UW, Orbic Myra 5G UW, TCL 10 5G UW, TCL 30 V 5G, and others (collectively, the "Accused Devices").[15] Verizon's website states that "If you're ready to jump on the 5G wagon, you need a phone that is 5G capable. Luckily, at Verizon, we offer a wide variety of 5G-enabled devices, so you can enjoy the benefits of 5G on the go. From the latest iPhone to the Samsung Galaxy, Google Pixel, and beyond, you can shop all these 5G-enabled devices and more at Verizon."[16]

43.    Verizon's website states that substantial portions of its mobile network are 4G/LTE and 5G, which means that they operate in accordance with 4G/LTE and 5G standards and infringe the Asserted Patents. In addition, the website provides a coverage map that identifies the maximum cellular network speeds available by location nationwide, including within Texas. According to the map, a majority of the cities in this district have 4G/LTE and/or 5G coverage. Among the cities

---

[14] Verizon, "What's the difference between 4G LTE and 5G? Understanding network speeds," https://www.verizon.com/articles/internet-essentials/network-speed-comparison/ (last visited Mar. 7, 2025).

[15] Verizon, *5G Phones*, https://www.verizon.com/5g/phones/ (last visited Mar. 7, 2025).

[16] Verizon, *5G Cell Phones*, https://www.verizon.com/shop/online/5g-cell-phones/ (last visited Mar. 7, 2025).

in this district identified with 4G/LTE and 5G coverage are Marshall, Beaumont, Lufkin, Sherman, Tyler, and Texarkana.[17]



*Figure 1: Verizon's coverage map showing 5G and 4G/LTE coverage in East Texas*[18]

44.    On information and belief, Verizon's mobile network, including the Verizon Base Stations, and the Accused Devices all operate in accordance with 4G/LTE and/or 5G standards, including Releases 8–15, thereby infringing the Asserted Patents. For example, on information and belief, Verizon sells access to Verizon's mobile network and Verizon Base Stations to customers, advertising to these customers that Verizon's network operates in accordance with 4G/LTE and 5G standards.

---

[17] Verizon, *Coverage Map*, https://www.verizon.com/coverage-map/ (last visited Mar. 7, 2025).

[18] *Id.* (screenshot taken Mar. 7, 2025).

45.    On information and belief, Verizon also sells the Accused Devices, which are 4G/LTE and 5G capable phones that operate in accordance with 4G/LTE and 5G standards and provide customers with access to Verizon's mobile network and the Verizon Base Stations.

## PEGASUS'S OFFERS TO LICENSE THE ASSERTED PATENTS ON FAIR, REASONABLE, AND NON-DISCRIMINATORY TERMS

46.    On September 7, 2022, Pegasus entered into an "Exclusive License Agreement" and acquired from KT all substantial rights in and to the Asserted Patents, including the exclusive right to assert all causes of action under the Asserted Patents, the exclusive right to any remedies for the infringement of the Asserted Patents, and the exclusive right to sublicense the Asserted Patents.

47.    In a December 16, 2022, letter to Verizon, counsel for Pegasus wrote that "we write to advise you that Verizon has been offering and selling products and services which implement 4G and/or 5G, commonly marketed as 4G/LTE, 4G, LTE, LTE-A, LTE-Advanced, 5G, and/or 5G NR. 4G and 5G depend on the technical teachings of numerous patents developed by KT Corporation (formerly Korea Telecom)." In the same letter, counsel for Pegasus informed Verizon that "Many of those patents have been declared essential to the 4G and/or 5G standards." Counsel referred to these patents as the "KT 4G and 5G Essential Patents."

48.    Counsel attached to the December 2022 letter a list of the KT 4G and 5G Essential Patents. The attachment lists, among others, the patents, patent applications, and/or parent patents of those referenced in Counts One through Five.

49.    In the December 2022 letter, counsel further wrote that "We believe that your company is infringing the KT 4G and 5G Essential Patents by making, using, offering for sale, selling, or importing products or services that implement the 4G and/or 5G standards, or by inducing others to infringe the KT 4G and 5G Essential Patents."

50.     In the same December 2022 letter, counsel for Pegasus "offer[ed] a license to Verizon under the KT 4G and 5G Essential Patents [including the Asserted Patents] on fair, reasonable, and non-discriminatory terms" and expressed a willingness to negotiate details of a license with Verizon. Between December 2022 and October 2023, Pegasus and Verizon continued discussions by phone and Zoom and through several email exchanges.

51.     On October 17, 2023, Pegasus sent Verizon another letter, again making clear that Pegasus was "ready to offer a license for its 4G and 5G-related patents on fair, reasonable, and non-discriminatory ('FRAND') terms." Pegasus provided a variety of public information about Pegasus's patent portfolio, KT's contribution to the 4G/LTE and 5G Standards, and a chart tying each KT 4G and 5G Essential Patent to a specific 4G/LTE or 5G Standard Number, including the Asserted Patents. In the same letter, Pegasus wrote that it could not share "confidential information without first entering an NDA."

52.     In an October 31, 2023 letter, Verizon declined to enter into any type of non-disclosure agreement that would protect Pegasus's confidential business information.

53.     In 2024, Pegasus again initiated negotiations regarding its standard-essential patents, including the Asserted Patents. The parties engaged in at least three conference calls, and Pegasus offered to license its standard-essential patents, including the Asserted Patents, on fair, reasonable, and non-discriminatory terms. The negotiations were ultimately unsuccessful due to Verizon's refusal to provide a counteroffer or otherwise respond meaningfully to Pegasus's offer.

54.     Pegasus negotiated with Verizon in good faith but, after engaging in multiple discussions, Pegasus and Verizon were unable to reach an agreement to license the Asserted Patents on fair, reasonable, and non-dsicriminatory terms.

55.     Pursuant to 35 U.S.C. § 287(a), Pegasus notified Verizon of its infringement at least as early as December 16, 2022, and Verizon continued to infringe thereafter. Accordingly, Pegasus is entitled to recover pre-suit damages at least as early as December 16, 2022.

## COUNT ONE
### Infringement of the '079 Patent

56.     Plaintiff repeats and incorporates by reference each preceding paragraph as if fully set forth herein and further states:

57.     On February 16, 2021, the United States Patent and Trademark Office duly and legally issued the '079 Patent entitled "Method and Device for Scheduling Uplink and Downlink Data Channel in Next Generation Wireless Network." A true and correct copy of the '079 Patent is attached as Exhibit 1 to this Complaint.

58.     On March 29, 2019, Kyujin Park and Woo-jin Choi, the inventors of the '079 Patent, assigned all title, rights, and interest in and to the '079 Patent to KT. The assignment was recorded with the United States Patent and Trademark Office on April 9, 2021.

59.     On September 7, 2022, KT and Pegasus entered the "Exclusive License Agreement," and KT assigned all substantial rights in and to the '079 Patent to Pegasus.

60.     Pegasus holds all substantial rights in and to the '079 Patent, including the exclusive right to assert all causes of action under the '079 Patent and the exclusive right to any remedies for the infringement of the '079 Patent.

61.     Verizon is not licensed under the '079 Patent, either expressly or implicitly, nor do they enjoy or benefit from any rights in or to the '079 Patent whatsoever.

62.     The '079 Patent generally relates to an apparatus and a method for scheduling an uplink signal and a downlink data channel in a 5G network. The claims of the '079 Patent recite novel and inventive systems and methods for numerology-aware scheduling of a downlink data

channel and an uplink signal in a 5G network, and determining the slot index of the scheduled DL data channel based on timing gap and subcarrier spacing values.

63.    Claims of the '079 Patent, including but not limited to independent claims 1, 6, and 8, are essential to certain 5G Standards, including Release 15 (and later) and its technical specifications, including but not limited to TS 38.211, TS 38.212, TS 38.213, TS 38.214, and TS 38.300, which include inventions covered by the '079 Patent. The claimed methods involve a user equipment  scheduling an uplink (UL) signal or a downlink (DL) data channel by receiving from a base station scheduling information on the UL signal (including an UL control channel) and the DL data channel through a DL control channel, where the scheduling information includes timing relationship configuration information (including timing gap information) between particular channels, the numerology of a carrier for receiving particular channels are different, and a particular process is applied to determine the slot index of the scheduled DL data channel based on timing gap and subcarrier spacing values, such as in claims 1, 6 and 8.

64.    Verizon has and continues, without authorization, to operate and use, and/or to induce and contribute to the operation and use by others of equipment and services that practice one or more claims of the '079 Patent literally or under the doctrine of equivalents (hereafter "'079 Accused Instrumentalities"). At a minimum, such '079 Accused Instrumentalities include (1) Verizon's mobile network, including the Verizon Base Stations and all base station equipment configured to operate in accordance with Release 15 (or later), and (2) all Accused Devices that are configured to operate in accordance with Release 15 (or later).

65.    Verizon has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, method and apparatus at least claims 1, 6, and 8 of the '079 Patent under 35 U.S.C. § 271(a) by operating and using, and/or inducing and contributing to the

operation and use by others of the '079 Accused Instrumentalities in the United States as described in paragraph 64 above. The '079 Accused Instrumentalities infringe at least claim 6 of the '079 Patent by practicing the 5G Standard, as indicated in Verizon's public statements in paragraphs 37-43 above. The '079 Accused Instrumentalities operate consistent with the 5G requirements of at least Release 15. This includes the ability to perform numerology-aware scheduling of a downlink data channel and an uplink signal in a 5G network, and determining the slot index of the scheduled DL data channel based on timing gap and subcarrier spacing values, as described in claim 6 of the '079 Patent. (See, e.g., TS 38.211, TS 38.212, TS 38.213, TS 38.214, and TS 38.300.)

66.    For example, Release 15's technical specifications show that the 5G standard requires a 5G mobile network or device, such as the '079 Accused Instrumentalities, to have the ability to configure scheduling information for scheduling a UL control signal and a DL data channel and transmit the scheduling information from a base station (BS) to a user equipment (UE) using downlink control information (DCI) Format 1_0 on a physical DL control channel (PDCCH) (e.g., TS 38.212 Sections 4.2 and  7.3.1.2.1, TS 38.213 Section 9.2.3 and TS 38.300 Sections 5.2.3 and 5.3.3). DCI Format 1_0 specifies timing relationship between the DL control channel and the DL data channel through time domain resource assignment. DCI Format 1_0 also specifies the transmission of timing relationship between the DL data channel and the UL control channel through PDSCH-to-HARQ_feedback timing indicator (e.g., TS 38.212 Section 7.3.1.2.1, TS 38.214 Section  5.1.2.1 and TS 38.213 Section 9.2.3). The 5G standard specifies different numerologies for the DL data channel and the DL control channel and a timing gap information, $K_0$ (e.g., TS 38.214 Section 5.1.2.1), as described in claim 6 of the '079 Patent. In particular, claim 6 of the '079 Patent discloses that the slot index of the DL data channel is computed as a particular

function of: a slot index of the DL control channel, a value of a subcarrier spacing of the carrier for receiving the DL control channel, a value of a subcarrier spacing of a carrier of the DL data channel, and a value of the timing gap information (e.g., TS 38.214 Section 5.1.2.1 and TS 38.211 Section 4.2).

67.     Verizon operates and sells within the United States access to its 5G mobile network that includes base stations that communicate with user mobile devices in accordance with Release 15 (or later), thereby infringing at least claims 1, 6, and 8 of the '079 Patent.

68.     In addition, Verizon has indirectly infringed and continues to indirectly infringe the '079 Patent in violation of 35 U.S.C. § 271(c) by selling or offering to sell in the United States, or importing into the United States, the Accused Devices with knowledge that they are especially designed or adapted to operate in a manner that infringes that patent and despite the fact that the infringing technology or aspects of the Accused Devices are not a staple article of commerce suitable for substantial non-infringing use.

69.     For example, Verizon knew that the functionality included in the Accused Devices enables each to communicate in accordance with Release 15 (and later), and that such functionality infringes the '079 Patent, including claims 1, 6, and 8.

70.     The infringing aspects of the Accused Devices can be used only in a manner that infringes the '079 Patent and thus have no substantial non-infringing uses. Those instrumentalities communicate in accordance with Release 15 (and later) specifically so that they can operate on Verizon's mobile network. The infringing aspects of those instrumentalities otherwise have no meaningful use, let alone any meaningful non-infringing use.

71.     Verizon's acts of infringement have caused and continue to cause damage to Pegasus, and Pegasus is entitled to recover from Verizon the damages it has sustained as a result

of those wrongful acts in an amount subject to proof at trial, but in no event less than a reasonable royalty for the use made of the invention in the '079 Patent, together with interest and costs as fixed by the Court.

72.    Verizon has had knowledge and notice of the '079 Patent and its infringement from the time that KT declared to 3GPP or any of its organizational partners that the '079 Patent was essential to the 4G/LTE Standard and/or 5G Standard because Verizon is a member of 3GPP and/or its organizational partners. In addition, Verizon has had knowledge and notice of the '079 Patent and its infringement since (i) at least December 2022, when it received the 2022 Notice Letter, and/or when it received subsequent correspondence identifying the patent, (ii) at least late 2024, when it engaged in ultimately unsuccessful negotiations for licenses on fair, reasonable, and non-discriminatory terms for Pegasus's standard-essential patents, and (iii) at least, and through, the filing and service of the Complaint. Despite this knowledge, Verizon continued to commit the infringing acts mentioned above.

73.    Upon information and belief, Verizon's infringement of the '079 Patent is willful and deliberate, entitling Pegasus to the recovery of enhanced damages under 35 U.S.C. § 284. Verizon has infringed and continues to infringe the '079 Patent despite the risk of infringement being either known or so obvious that it should have been known to Verizon.

## COUNT TWO
### Infringement of the '958 Patent

74.    Plaintiff repeats and incorporates by reference each preceding paragraph as if fully set forth herein and further states:

75.    On January 31, 2023, the United States Patent and Trademark Office duly and legally issued the '958 Patent entitled "Method and Apparatus for Transmitting Reference Signal

or Frequency Offset Estimation in New Wireless Communication System." A true and correct copy of the '958 Patent is attached as Exhibit 2 to this Complaint.

76.    On December 23, 2022, Ki-tae Kim and Woo-jin Choi, the inventors of the '958 Patent, assigned all title, rights, and interest in and to the '958 Patent to KT. The assignment was recorded with the United States Patent and Trademark Office on October 11, 2023.

77.    On September 7, 2022, KT and Pegasus entered the "Exclusive License Agreement," and KT assigned all substantial rights in and to the '958 Patent to Pegasus.

78.    Pegasus holds all substantial rights in and to the '958 Patent, including the exclusive right to assert all causes of action under the '958 Patent and the exclusive right to any remedies for the infringement of the '958 Patent.

79.    Verizon is not licensed under the '958 Patent, either expressly or implicitly, nor do they enjoy or benefit from any rights in or to the '958 Patent whatsoever.

80.    The '958 Patent generally relates to an apparatus that efficiently supports synchronization and reference signals in a 5G network. The claims of the '958 Patent recite novel and inventive systems for synchronization and reference signal configuration, enabling support for 5G's flexible numerology.

81.    Claims of the '958 Patent, including not limited to independent claims 1, 6, and 11 are essential to certain 5G Standards, including Release 15 (and later) and its technical specifications, including but not limited to TS 38.214, TS 38.211 and TS 38.331, which include inventions covered by the '958 Patent. The claimed apparatus claims involve a transmitter or a receiver to either transmit or receive a synchronization signal in a first set of one or more symbols, a radio resource control (RRC) signal including configuration about a reference signal, and a

reference signal in a second set of one more symbols, where the referenced signal is configured based on a numerology, such as in claims 1, 6 and 11.

82.    Verizon has and continues, without authorization, to operate and use, and/or to induce and contribute to the operation and use by others of equipment and services that practice one or more claims of the '958 Patent literally or under the doctrine of equivalents (hereafter "'958 Accused Instrumentalities"). At a minimum, such '958 Accused Instrumentalities include (1) Verizon's mobile network, including the Verizon Base Stations and all base station equipment configured to operate in accordance with Release 15 (or later), and (2) all Accused Devices that are configured to operate in accordance with Release 15 (or later).

83.    Verizon has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, at least independent claims 1, 6, and 11 of the '958 Patent under 35 U.S.C. § 271(a) by operating and using, and/or inducing and contributing to the operation and use by others of the '958 Accused Instrumentalities in the United States as described in paragraph 82 above. The '958 Accused Instrumentalities infringe at least claim 6 of the '958 Patent by practicing the 5G Standard, as indicated in Verizon's public statements in paragraphs 37-43 above. The '958 Accused Instrumentalities operate consistent with the 5G requirements of at least Release 15. This includes the ability to perform synchronization and reference signal configuration, enabling support for 5G's flexible numerology, as described in claim 6 of the '958 Patent. (See, e.g., TS 38.214, TS 38.211, and TS 38.331.)

84.    For example, Release 15's technical specifications show that the 5G standard requires a 5G mobile network or device, such as the '958 Accused Instrumentalities, to comprise a controller that controls a transmitter and receiver to transmit a synchronization signal in a first set of one or more symbols (e.g., TS 38.211 Section 7.4.3.1), a radio resource control (RRC) signal

including configuration information about a reference signal (e.g., TS 38.214 Section 5.1.6.1.1 and TS 38.331 on NZP-CSI-RS-ResourceSet), and a reference signal in a second set of one or more symbols based on the configuration information (e.g., TS 38.214 Section 5.1.6.1.1 and TS 38.211 Section 7.4.1.5.3), as described in claim 6 of the '958 Patent. In particular, claim 6 of the '958 Patent discloses the reference signal is configured based on a numerology (e.g., TS 38.211 Section 7.4.1.5.3).

85.    Verizon operates and sells within the United States access to its 5G mobile network that includes base stations that communicate with user mobile devices in accordance with Release 15 (or later), thereby infringing at least claims 1, 6, and 11 of the '958 Patent.

86.    In addition, Verizon has indirectly infringed and continues to indirectly infringe the '958 Patent in violation of 35 U.S.C. § 271(b) by taking active steps to encourage and facilitate direct infringement by others, including OEMs, agent-subsidiaries, affiliates, partners, service providers, manufacturers, importers, resellers, customers, and/or end users, in this district and elsewhere in the United States, through the dissemination of the '958 Accused Instrumentalities and the creation and dissemination of promotional and marketing materials, supporting materials, instructions, product manuals, and/or technical information relating to such products with knowledge and the specific intent that its efforts will result in the direct infringement of the '958 Patent.

87.    For example, Verizon took active steps to encourage end users to utilize its mobile network in the United States in a manner it knows will directly infringe each element of at least independent claims 1, 6, and 11 of the '958 Patent, including by selling access to its 4G/LTE mobile network and encouraging users to operate Accused Devices on that network despite

knowing of the patent and the fact that such usage of its network in accordance with Release 15 (and later) will cause the user to use their mobile device in a manner that infringes the '958 Patent.

88.    Verizon undertook and continues to undertake the above-identified active steps after receiving notice of the '958 Patent and how those steps induce infringement of that patent.

89.    In addition, Verizon has indirectly infringed and continues to indirectly infringe the '958 Patent in violation of 35 U.S.C. § 271(c) by selling or offering to sell in the United States, or importing into the United States, the Accused Devices with knowledge that they are especially designed or adapted to operate in a manner that infringes that patent and despite the fact that the infringing technology or aspects of the Accused Devices are not a staple article of commerce suitable for substantial non-infringing use.

90.    For example, Verizon knew that the functionality included in the Accused Devices enables each to communicate in accordance with Release 15 (and later), and that such functionality infringes the '958 Patent, including at least independent claims 1, 6, and 11.

91.    The infringing aspects of the Accused Devices can be used only in a manner that infringes the '958 Patent and thus have no substantial non-infringing uses. Those instrumentalities communicate in accordance with Release 15 (and later) specifically so that they can operate on Verizon's mobile network. The infringing aspects of those instrumentalities otherwise have no meaningful use, let alone any meaningful non-infringing use.

92.    Verizon's acts of infringement have caused and continue to cause damage to Pegasus, and Pegasus is entitled to recover from Verizon the damages it has sustained as a result of those wrongful acts in an amount subject to proof at trial, but in no event less than a reasonable royalty for the use made of the invention in the '958 Patent, together with interest and costs as fixed by the Court.

93.     Verizon has had knowledge and notice of the '958 Patent and its infringement from the time that KT declared to 3GPP or any of its organizational partners that the '958 Patent was essential to the 4G/LTE Standard and/or 5G Standard because Verizon is a member of 3GPP and/or its organizational partners. In addition, Verizon has had knowledge and notice of the '958 Patent and its infringement since (i) at least December 2022, when it received the 2022 Notice Letter, and/or when it received subsequent correspondence identifying the patent, (ii) at least late 2024, when it engaged in ultimately unsuccessful negotiations for licenses on fair, reasonable, and non-discriminatory terms for Pegasus's standard-essential patents, and (iii) at least, and through, the filing and service of the Complaint. Despite this knowledge, Verizon continued to commit the infringing acts mentioned above.

94.     Upon information and belief, Verizon's infringement of the '958 Patent is willful and deliberate, entitling Pegasus to the recovery of enhanced damages under 35 U.S.C. § 284. Verizon has infringed and continues to infringe the '958 Patent despite the risk of infringement being either known or so obvious that it should have been known to Verizon.

**COUNT THREE**
**Infringement of the '720 Patent**

95.     Plaintiff repeats and incorporates by reference each preceding paragraph as if fully set forth herein and further states:

96.     On January 19, 2021, the United States Patent and Trademark Office duly and legally issued the '720 Patent entitled "Method and Apparatus for Transmitting and Receiving Downlink Pre-emption Indication Data in Next Generation Wireless Network." A true and correct copy of the '720 Patent is attached as Exhibit 3 to this Complaint.

97.    On December 23, 2022, Kyujin Park and Woo-jin Choi, the inventors of the '720 Patent, assigned all title, rights, and interest in and to the '720 Patent to KT. The assignment was recorded with the United States Patent and Trademark Office on October 11, 2023.

98.    On September 7, 2022, KT and Pegasus entered the "Exclusive License Agreement," and KT assigned all substantial rights in and to the '720 Patent to Pegasus.

99.    Pegasus holds all substantial rights in and to the '720 Patent, including the exclusive right to assert all causes of action under the '720 Patent and the exclusive right to any remedies for the infringement of the '720 Patent.

100.    Verizon is not licensed under the '720 Patent, either expressly or implicitly, nor do they enjoy or benefit from any rights in or to the '720 Patent whatsoever.

101.    The '720 Patent generally relates to an apparatus and a method for transmitting/receiving downlink preemption indication information in a 5G network. The claims of the '720 Patent recite novel and inventive systems and methods for efficient preemption implementation by receiving monitoring configuration information on the downlink (DL) preemption indication information that includes whether to monitor the DL preemption indication information and monitoring the DL preemption indication information. Furthermore, the DL preemption indication information is indicated through group-common DL control information (DCI), and the group-common DCI is received through a resource after the preempted resource indicated by the DL preemption indication information.

102.    Claims of the '720 Patent, including but not limited to claims 1, 4, and 7, are essential to certain 5G Standards, including Release 15 (and later) and its technical specifications, including but not limited to TS 38.212, TS 38.213, TS 38.300, and TS 38.331, which include inventions covered by the '720 Patent. The claimed methods involve a user equipment for

receiving monitoring configuration information on the DL preemption indication information (which includes information on whether to monitor the DL preemption indication information) and monitoring the DL preemption indication information indicated through group-common DCI, which is received through a resource after the preempted resource indicated by the DL preemption indication information, such as at least in claims 1, 4 and 7.

103.    Verizon has and continues, without authorization, to operate and use, and/or to induce and contribute to the operation and use by others of equipment and services that practice one or more claims of the '720 Patent literally or under the doctrine of equivalents (hereafter "'720 Accused Instrumentalities"). At a minimum, such '720 Accused Instrumentalities include (1) Verizon's mobile network, including the Verizon Base Stations and all base station equipment configured to operate in accordance with Release 15 (or later), and (2) all Accused Devices that are configured to operate in accordance with Release 15 (or later).

104.    Verizon has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, at least method and apparatus claims 1, 4, and 7 of the '720 Patent under 35 U.S.C. § 271(a) by operating and using, and/or inducing and contributing to the operation and use by others of the '720 Accused Instrumentalities in the United States as described in paragraph 103 above. The '720 Accused Instrumentalities infringe at least claim 4 of the '720 Patent by practicing the 5G Standard, as indicated in Verizon's public statements in paragraphs 37-43 above. The '720 Accused Instrumentalities operate consistent with the 5G requirements of at least Release 15. This includes the ability to configure monitoring configuration information on the DL preemption indication information that includes whether to monitor the DL preemption indication information and transmitting the DL preemption indication information after

preemption, as described in claim 4 of the '720 Patent. (See, e.g., TS 38.212, TS 38.213, TS 38.300, and TS 38.331.)

105.    For example, Release 15's technical specifications show that the 5G standard requires a 5G mobile network or device, such as the '720 Accused Instrumentalities, to have the ability to configure monitoring configuration information on the DL preemption indication information, which includes information on whether to monitor the DL preemption indication information (e.g., TS 38.300 Section 10.2 and TS 38.331 Section 6.3.2 on PDCCH-Config and DownlinkPreemption), transmitting the monitoring configuration information and, when DL is preempted, transmitting the DL preemption indication information to a UE (e.g., TS 38.331 Section 6.3.2 on PDCCH-Config and DownlinkPreemption), as described in claim 4 of the '720 Patent. In particular, claim 4 of the '720 Patent discloses the DL preemption indication information is indicated through a group-common DCI, received through a resource after the preempted resource indicated by the DL preemption indication information (e.g., TS 38.212 Section 7.3.1, TS 38.213 Section 11.2 and TS 38.331 Section 6.3.2 on DownlinkPreemption).

106.    Verizon operates and sells within the United States access to its 5G mobile network that includes base stations that communicate with user mobile devices in accordance with Release 15 (or later), thereby infringing at least claims 1, 4, and 7 of the '720 Patent.

107.    In addition, Verizon has indirectly infringed and continues to indirectly infringe the '720 Patent in violation of 35 U.S.C. § 271(b) by taking active steps to encourage and facilitate direct infringement by others, including OEMs, agent-subsidiaries, affiliates, partners, service providers, manufacturers, importers, resellers, customers, and/or end users, in this district and elsewhere in the United States, through the dissemination of the '720 Accused Instrumentalities and the creation and dissemination of promotional and marketing materials, supporting materials,

instructions, product manuals, and/or technical information relating to such products with knowledge and the specific intent that its efforts will result in the direct infringement of the '720 Patent.

108. For example, Verizon took active steps to encourage end users to utilize its mobile network in the United States in a manner it knows will directly infringe each element of at least claims 1, 4, and 7 of the '720 Patent, including by selling access to its 5G mobile network and encouraging users to operate Accused Devices on that network despite knowing of the patent and the fact that such usage of its network in accordance with Release 15 (and later) will cause the user to use their mobile device in a manner that infringes the '720 Patent.

109. Verizon undertook and continues to undertake the above-identified active steps after receiving notice of the '720 Patent and how those steps induce infringement of that patent.

110. In addition, Verizon has indirectly infringed and continues to indirectly infringe the '720 Patent in violation of 35 U.S.C. § 271(c) by selling or offering to sell in the United States, or importing into the United States, the Accused Devices with knowledge that they are especially designed or adapted to operate in a manner that infringes that patent and despite the fact that the infringing technology or aspects of the Accused Devices are not a staple article of commerce suitable for substantial non-infringing use.

111. For example, Verizon knew that the functionality included in the Accused Devices enables each to communicate in accordance with Release 15 (and later), and that such functionality infringes the '720 Patent, including claims 1, 4, and 7.

112. The infringing aspects of the Accused Devices can be used only in a manner that infringes the '720 Patent and thus have no substantial non-infringing uses. Those instrumentalities communicate in accordance with Release 15 (and later) specifically so that they can operate on

Verizon's mobile network. The infringing aspects of those instrumentalities otherwise have no meaningful use, let alone any meaningful non-infringing use.

113.    Verizon's acts of infringement have caused and continue to cause damage to Pegasus, and Pegasus is entitled to recover from Verizon the damages it has sustained as a result of those wrongful acts in an amount subject to proof at trial, but in no event less than a reasonable royalty for the use made of the invention in the '720 Patent, together with interest and costs as fixed by the Court.

114.    Verizon has had knowledge and notice of the '720 Patent and its infringement from the time that KT declared to 3GPP or any of its organizational partners that the '720 Patent was essential to the 4G/LTE Standard and/or 5G Standard because Verizon is a member of 3GPP and/or its organizational partners. In addition, Verizon has had knowledge and notice of the '720 Patent and its infringement since (i) at least December 2022, when it received the 2022 Notice Letter, and/or when it received subsequent correspondence identifying the patent, (ii) at least late 2024, when it engaged in ultimately unsuccessful negotiations for licenses on fair, reasonable, and non-discriminatory terms for Pegasus's standard-essential patents, and (iii) at least, and through, the filing and service of the Complaint. Despite this knowledge, Verizon continued to commit the infringing acts mentioned above.

115.    Upon information and belief, Verizon's infringement of the '720 Patent is willful and deliberate, entitling Pegasus to the recovery of enhanced damages under 35 U.S.C. § 284. Verizon has infringed and continues to infringe the '720 Patent despite the risk of infringement being either known or so obvious that it should have been known to Verizon.

## COUNT FOUR
### Infringement of the '530 Patent

116.    Plaintiff repeats and incorporates by reference each preceding paragraph as if fully set forth herein and further states:

117.    On September 29, 2020, the United States Patent and Trademark Office duly and legally issued the '530 Patent entitled "Method and Device for Transmitting/Receiving Synchronization Signal and System Information for Terminal in New Wireless Access Network." A true and correct copy of the '530 Patent is attached as Exhibit 4 to this Complaint.

118.    On December 23, 2022, Kyujin Park and Woo-jin Choi, the inventors of the '530 Patent, assigned all title, rights, and interest in and to the '530 Patent to KT. The assignment was recorded with the United States Patent and Trademark Office on October 11, 2023.

119.    On September 7, 2022, KT and Pegasus entered the "Exclusive License Agreement," and KT assigned all substantial rights in and to the '530 Patent to Pegasus.

120.    Pegasus holds all substantial rights in and to the '530 Patent, including the exclusive right to assert all causes of action under the '530 Patent and the exclusive right to any remedies for the infringement of the '530 Patent.

121.    Verizon is not licensed under the '530 Patent, either expressly or implicitly, nor do they enjoy or benefit from any rights in or to the '530 Patent whatsoever.

122.    The '530 Patent generally relates to an apparatus and a method for defining subcarrier spacings and transmitting or receiving a synchronization signal and system information in a 5G network. The claims of the '530 Patent recite novel and inventive systems and methods for transmitting synchronization signals and system information transmission channel in an 5G network through one or more defined subcarrier spacings. The subcarrier spacing used for system

32

information not transmitted via a physical broadcasting channel is signaled through the physical broadcasting channel.

123.    Claims of the '530 Patent, including but not limited to claims 1, 5, and 9, are essential to certain 5G Standards, including Release 15 (and later) and its technical specifications, including but not limited to TS 38.300, TS 38.213, TS 38.211, TS 38.212, and TS 38.331, which include inventions covered by the '530 Patent. The claimed methods involve a base station equipment for defining one or more subcarrier spacings to transmit a synchronization signal and system information transmission channel in a 5G network, and determining a subcarrier spacing to transmit the synchronization signal and system information transmission channel. The subcarrier spacing used for system information not transmitted via a physical broadcasting channel is signaled through the physical broadcasting channel, including but not limited to in claims 1, 5, and 9.

124.    Verizon has and continues, without authorization, to operate and use, and/or to induce and contribute to the operation and use by others of equipment and services that practice one or more claims of the '530 Patent literally or under the doctrine of equivalents (hereafter "'530 Accused Instrumentalities"). At a minimum, such '530 Accused Instrumentalities include (1) Verizon's mobile network, including the Verizon Base Stations and all base station equipment configured to operate in accordance with Release 15 (or later), and (2) all Accused Devices that are configured to operate in accordance with Release 15 (or later).

125.    Verizon has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, at least method and apparatus claims 1, 5, 9 of the '530 Patent under 35 U.S.C. § 271(a) by operating and using, and/or inducing and contributing to the operation and use by others of the '530 Accused Instrumentalities in the United States as described

in paragraph 124 above. The '530 Accused Instrumentalities infringe at least claim 9 of the '530 Patent by practicing the 5G Standard, as indicated in Verizon's public statements in paragraphs 37-43 above. The '530 Accused Instrumentalities operate consistent with the 5G requirements of at least Release 15. This includes the ability to define one or more subcarrier spacings to transmit a synchronization signal and system information transmission channel in a 5G network, and determine a subcarrier spacing to transmit the synchronization signal and system information transmission channel. The subcarrier spacing used for system information not transmitted via a physical broadcasting channel is signaled through the physical broadcasting channel, as described in claim 9 of the '530 Patent. (See, e.g., TS 38.300, TS 38.213, TS 38.211, TS 38.212, and TS 38.331.)

126.    For example, Release 15's technical specifications show that the 5G standard requires a 5G mobile network or device, such as the '530 Accused Instrumentalities, to have the ability to define subcarrier spacings and determine one subcarrier spacing to transmit at least one synchronization signal and at least one system information transmission channel (e.g., TS 38.213 Section 4.1 and TS 38.211 Section 7.4.3.1) and transmit the at least one synchronization signal and at least one system information transmission channel based on the determined subcarrier spacing (e.g., TS 38.211 Section 7.4.3.1 and TS 38.213 Section 4.1), as described in claim 9 of the '530 Patent. In particular, claim 9 of the '530 Patent discloses that the subcarrier spacing used for system information not transmitted via a physical broadcasting channel is signaled through the physical broadcasting channel (e.g., TS 38.212 Section 4.2 and TS 38.331 Sections 5.2.1 and 6.2 on MIB).

127.    Verizon operates and sells within the United States access to its 5G mobile network that includes base stations that communicate with user mobile devices in accordance with Release 15 (or later), thereby infringing at least claims 1, 5, and 9 of the '530 Patent.

128.    In addition, Verizon has indirectly infringed and continues to indirectly infringe the '530 Patent in violation of 35 U.S.C. § 271(b) by taking active steps to encourage and facilitate direct infringement by others, including OEMs, agent-subsidiaries, affiliates, partners, service providers, manufacturers, importers, resellers, customers, and/or end users, in this district and elsewhere in the United States, through the dissemination of the '530 Accused Instrumentalities and the creation and dissemination of promotional and marketing materials, supporting materials, instructions, product manuals, and/or technical information relating to such products with knowledge and the specific intent that its efforts will result in the direct infringement of the '530 Patent.

129.    For example, Verizon took active steps to encourage end users to utilize its mobile network in the United States in a manner it knows will directly infringe each element of at least claims 1, 5, and 9 of the '530 Patent, including by selling access to its 5G mobile network and encouraging users to operate Accused Devices on that network despite knowing of the patent and the fact that such usage of its network in accordance with Release 15 (and later) will cause the user to use their mobile device in a manner that infringes the '530 Patent.

130.    Verizon undertook and continues to undertake the above-identified active steps after receiving notice of the '530 Patent and how those steps induce infringement of that patent.

131.    In addition, Verizon has indirectly infringed and continues to indirectly infringe the '530 Patent in violation of 35 U.S.C. § 271(c) by selling or offering to sell in the United States, or importing into the United States, the Accused Devices with knowledge that they are especially

designed or adapted to operate in a manner that infringes that patent and despite the fact that the infringing technology or aspects of the Accused Devices are not a staple article of commerce suitable for substantial non-infringing use.

132.   For example, Verizon knew that the functionality included in the Accused Devices enables each to communicate in accordance with Release 15 (and later), and that such functionality infringes the '530 Patent, including claims 1, 5, and 9.

133.   The infringing aspects of the Accused Devices can be used only in a manner that infringes the '530 Patent and thus have no substantial non-infringing uses. Those instrumentalities communicate in accordance with Release 15 (and later) specifically so that they can operate on Verizon's mobile network. The infringing aspects of those instrumentalities otherwise have no meaningful use, let alone any meaningful non-infringing use.

134.   Verizon's acts of infringement have caused and continue to cause damage to Pegasus, and Pegasus is entitled to recover from Verizon the damages it has sustained as a result of those wrongful acts in an amount subject to proof at trial, but in no event less than a reasonable royalty for the use made of the invention in the '530 Patent, together with interest and costs as fixed by the Court.

135.   Verizon has had knowledge and notice of the '530 Patent and its infringement from the time that KT declared to 3GPP or any of its organizational partners that the '530 Patent was essential to the 4G/LTE Standard and/or 5G Standard because Verizon is a member of 3GPP and/or its organizational partners. In addition, Verizon has had knowledge and notice of the '530 Patent and its infringement since (i) at least December 2022, when it received the 2022 Notice Letter, and/or when it received subsequent correspondence identifying the patent, (ii) at least late 2024, when it engaged in ultimately unsuccessful negotiations for licenses on fair, reasonable, and non-

discriminatory terms for Pegasus's standard-essential patents, and (iii) at least, and through, the filing and service of the Complaint. Despite this knowledge, Verizon continued to commit the infringing acts mentioned above.

136.    Upon information and belief, Verizon's infringement of the '530 Patent is willful and deliberate, entitling Pegasus to the recovery of enhanced damages under 35 U.S.C. § 284. Verizon has infringed and continues to infringe the '530 Patent despite the risk of infringement being either known or so obvious that it should have been known to Verizon.

## COUNT FIVE
### Infringement of the '218 Patent

137.    Plaintiff repeats and incorporates by reference each preceding paragraph as if fully set forth herein and further states:

138.    On June 6, 2023, the United States Patent and Trademark Office duly and legally issued the '218 Patent entitled "Method for Configuring Frequency Resource About Component Carrier for New Radio and Apparatuses Thereof." A true and correct copy of the '218 Patent is attached as Exhibit 5 to this Complaint.

139.    On December 23, 2022, Kyujin Park and Woo-jin Choi, the inventors of the '218 Patent, assigned all title, rights, and interest in and to the '218 Patent to KT. The assignment was recorded with the United States Patent and Trademark Office on October 11, 2023.

140.    On September 7, 2022, KT and Pegasus entered the "Exclusive License Agreement," and KT assigned all substantial rights in and to the '218 Patent to Pegasus.

141.    Pegasus and holds all substantial rights in and to the '218 Patent, including the exclusive right to assert all causes of action under the '218 Patent and the exclusive right to any remedies for the infringement of the '218 Patent.

142.    Verizon is not licensed under the '218 Patent, either expressly or implicitly, nor do they enjoy or benefit from any rights in or to the '218 Patent whatsoever.

143.    The '218 Patent generally relates to an apparatus that support bandwidth parts (BWPs) within a component carrier (CC) in a 5G network. The claims of the '218 Patent recite novel and inventive systems that obtain reference point information and details about one or more BWPs within a single CC, including starting Physical Resource Block (PRB) Index and number of PRBs in each BWP. Each BWP's location is determined based on the reference point and at least one PRB where a synchronization signal (SS) block is received is determined based on the information on the reference point. Furthermore, the index of the starting PRB for each BWP is based on a common PRB index, numbered from a lowest frequency in one CC, and within each BWP, a BWP-specific PRB index is used.

144.    Claims of the '218 Patent, including but not limited to claims 1, 7, and 12, are essential to certain 5G Standards, including Release 15 (and later) and its technical specifications, including but not limited to TS 38.211, TS 38.300, TS 38.331, TS 38.213, TS 38.214, and TS 38.321, which include inventions covered by the '218 Patent. For instance, the claimed wireless device in claim 1 involves the transmitter and receiver to receive information on a reference point and information on one or more BWPs, activate at least one BWP to receive downlink data and transmit uplink data and receive a SS block in at least one PRB. The one or more BWPs exist in one CC, each BWPs has a location that is determined based on the reference point, the information on the one or more BWPs includes an index of a starting PRB for each BWP and a number of PRBs within each BWP, the index of the starting PRB for each BWP is based on a common PRB index, numbered from a lowest frequency in the one CC, and within each BWP a BWP-specific PRB index is used. Furthermore, the downlink data is received and the uplink data is transmitted

based on the BWP-specific PRB index and the at least one PRB where the SS block is received is determined based on the information on the reference point, including but not limited to in claims 1, 7, and 12.

145.     Verizon has and continues, without authorization, to operate and use, and/or to induce and contribute to the operation and use by others of equipment and services that practice one or more claims of the '218 Patent literally or under the doctrine of equivalents (hereafter "'218 Accused Instrumentalities"). At a minimum, such '218 Accused Instrumentalities include (1) Verizon's mobile network, including the Verizon Base Stations and all base station equipment configured to operate in accordance with Release 15 (or later), and (2) all Accused Devices that are configured to operate in accordance with Release 15 (or later).

146.     Verizon has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, at least apparatus claims 1, 7, and 12 of the '218 Patent under 35 U.S.C. § 271(a) by operating and using, and/or inducing and contributing to the operation and use by others of the '218 Accused Instrumentalities in the United States as described in paragraph 145 above. The '218 Accused Instrumentalities infringe at least claim 7 of the '218 Patent by practicing the 5G Standard, as indicated in Verizon's public statements in paragraphs 37-43 above. The '218 Accused Instrumentalities operate consistent with the 5G requirements of at least Release 15. This includes systems that transmit reference point information and details about one or more BWPs within a single CC, including starting Physical Resource Block (PRB) Index and number of PRBs in each BWP. Each BWP's location is determined based on the reference point and at least one PRB where a synchronization signal SS block is transmitted is determined based on the information on the reference point. Furthermore, the index of the starting PRB for each BWP is based on a common PRB index, numbered from a lowest frequency in one CC, and within each

BWP, a BWP-specific PRB index is used, as described in at least claim 7 of the '218 Patent. (See, e.g., TS 38.211, TS 38.300, TS 38.331, TS 38.213, TS 38.214, and TS 38.321.)

147.    For example, Release 15's technical specifications show that the 5G standard requires a 5G mobile network or device, such as the '218 Accused Instrumentalities, to have the ability to control the transmitter and receiver to transmit information on a reference point and information on one or more BWPs (e.g., TS 38.211 Section 4.4.4.2, TS 38.213 Section 12 and TS 38.331 Section 6.3.2 on BWP and SCS-SpecificCarrier), transmit downlink data and receive uplink data within at least one BWP (e.g., TS 38.321 Section 5.15 and TS 38.213 Section 12) and transmit a SS block in at least one PRB (e.g., TS 38.211 Section 4.4.4.2), as described in claim 7 of the '218 Patent. In particular, claim 7 of the '218 Patent discloses the one or more BWPs exist in one CC (e.g., TS 38.300 Sections 5.1 and 6.10), each BWPs has a location that is determined based on the reference point (e.g., TS 38.213 Section 12 and TS 38.331 Section 6.3.2 on BWP and SCS-SpecificCarrier), the information on the one or more BWPs includes an index of a starting PRB for each BWP and a number of PRBs within each BWP (e.g., TS 38.213 Section 12, TS 38.214 Section 5.1.2.2.2 and TS 38.331 Section 6.3.2 on BWP), the index of the starting PRB for each BWP is based on a common PRB index, numbered from a lowest frequency in the one CC (e.g., TS 38.331 Section 6.3.2 on BWP and TS 38.211 Sections 4.4.4.3 and 4.4.4.4), and within each BWP a BWP-specific PRB index is used (e.g., TS 38.211 Section 4.4.4.4 and TS 38.213 Section 12). Furthermore, downlink data is transmitted and the uplink data is received based on the BWP-specific PRB index (e.g., TS 38.211 Section 4.4.4.4 and TS 38.213 Section 12) and the at least one PRB where the SS block is transmitted is determined based on the information on the reference point (TS 38.211 Sections 4.4.4.2 and 4.4.4.3).

148.    Verizon operates and sells within the United States access to its 5G mobile network that includes base stations that communicate with user mobile devices in accordance with Release 15 (or later), thereby infringing at least claims 1, 7, and 12 of the '218 Patent.

149.    In addition, Verizon has indirectly infringed and continues to indirectly infringe the '218 Patent in violation of 35 U.S.C. § 271(b) by taking active steps to encourage and facilitate direct infringement by others, including OEMs, agent-subsidiaries, affiliates, partners, service providers, manufacturers, importers, resellers, customers, and/or end users, in this district and elsewhere in the United States, through the dissemination of the '218 Accused Instrumentalities and the creation and dissemination of promotional and marketing materials, supporting materials, instructions, product manuals, and/or technical information relating to such products with knowledge and the specific intent that its efforts will result in the direct infringement of the '218 Patent.

150.    For example, Verizon took active steps to encourage end users to utilize its mobile network in the United States in a manner it knows will directly infringe each element of at least claims 1, 7, and 12 of the '218 Patent, including by selling access to its 5G mobile network and encouraging users to operate Accused Devices on that network despite knowing of the patent and the fact that such usage of its network in accordance with Release 15 (and later) will cause the user to use their mobile device in a manner that infringes the '218 Patent.

151.    Verizon undertook and continues to undertake the above-identified active steps after receiving notice of the '218 Patent and how those steps induce infringement of that patent.

152.    In addition, Verizon has indirectly infringed and continues to indirectly infringe the '218 Patent in violation of 35 U.S.C. § 271(c) by selling or offering to sell in the United States, or importing into the United States, the Accused Devices with knowledge that they are especially

designed or adapted to operate in a manner that infringes that patent and despite the fact that the infringing technology or aspects of the Accused Devices are not a staple article of commerce suitable for substantial non-infringing use.

153.    For example, Verizon knew that the functionality included in the Accused Devices enables each to communicate in accordance with Release 15 (and later), and that such functionality infringes the '218 Patent, including claims 1, 7, and 12.

154.    The infringing aspects of the Accused Devices can be used only in a manner that infringes the '218 Patent and thus have no substantial non-infringing uses. Those instrumentalities communicate in accordance with Release 15 (and later) specifically so that they can operate on Verizon's mobile network. The infringing aspects of those instrumentalities otherwise have no meaningful use, let alone any meaningful non-infringing use.

155.    Verizon's acts of infringement have caused and continue to cause damage to Pegasus, and Pegasus is entitled to recover from Verizon the damages it has sustained as a result of those wrongful acts in an amount subject to proof at trial, but in no event less than a reasonable royalty for the use made of the invention in the '218 Patent, together with interest and costs as fixed by the Court.

156.    Verizon has had knowledge and notice of the '218 Patent and its infringement from the time that KT declared to 3GPP or any of its organizational partners that the '218 Patent was essential to the 4G/LTE Standard and/or 5G Standard because Verizon is a member of 3GPP and/or its organizational partners. In addition, Verizon has had knowledge and notice of the '218 Patent and its infringement since (i) at least December 2022, when it received the 2022 Notice Letter, and/or when it received subsequent correspondence identifying the patent, (ii) at least late 2024, when it engaged in ultimately unsuccessful negotiations for licenses on fair, reasonable, and non-

discriminatory terms for Pegasus's standard-essential patents, and (iii) at least, and through, the filing and service of the Complaint. Despite this knowledge, Verizon continued to commit the infringing acts mentioned above.

157.    Upon information and belief, Verizon's infringement of the '218 Patent is willful and deliberate, entitling Pegasus to the recovery of enhanced damages under 35 U.S.C. § 284. Verizon has infringed and continues to infringe the '218 Patent despite the risk of infringement being either known or so obvious that it should have been known to Verizon.

## DEMAND FOR JURY TRIAL

158.    Pegasus hereby demands a jury trial pursuant to Federal Rule of Civil Procedure 38.

## FEES AND COSTS

159.    To the extent that Verizon's willful and deliberate infringement or litigation conduct supports a finding that this is an "exceptional case," an award of attorneys' fees and costs to Pegasus is justified pursuant to 35 U.S.C. § 285.

## PRAYER FOR RELIEF

WHEREFORE, Pegasus prays for relief against Verizon as follows:

a.    Declaring that Verizon has directly infringed the Asserted Patents, contributed to the infringement of the Asserted Patents, and/or induced the infringement of the Asserted Patents;

b.    Awarding Pegasus damages arising out of this infringement of the Asserted Patents, including enhanced damages pursuant to 35 U.S.C. § 284 and supplemental damages for any continuing post-verdict infringement through entry of the final judgment, in an amount according to proof;

c.    Awarding Pegasus prejudgment and post-judgment interest, in an amount according to proof;

d.    Awarding Pegasus a compulsory ongoing royalty, in an amount according to proof;

e. Awarding attorneys' fees pursuant to 35 U.S.C. § 285 or as otherwise permitted by law;

f. Declaring that Verizon's infringement of the Asserted Patents is willful;

g. Awarding such other relief which may be requested and to which the Plaintiff is entitled; and

h. Awarding to Pegasus such other costs, equitable relief, and any other relief to which Pegasus is entitled and as the Court deems just and proper.


DATED: March 12, 2025                    Respectfully submitted,

                                         By:    */s/ Max L. Tribble*

                                              Max L. Tribble – Lead Counsel
                                                 Texas State Bar No. 20213950
                                                 mtribble@susmangodfrey.com
                                              Joseph S. Grinstein
                                                 Texas State Bar No. 24002188
                                                 jgrinstein@susmangodfrey.com
                                              Corey M. Lipschutz
                                                 Texas State Bar No. 24099303
                                                 clipschutz@susmangodfrey.com
                                              **SUSMAN GODFREY L.L.P.**
                                              1000 Louisiana Street, Suite 5100
                                              Houston, TX 77002
                                              Telephone: (713) 651-9366
                                              Facsimile: (713) 654-6666

                                              Kalpana Srinivasan
                                                 California State Bar No. 237218
                                                 ksrinivasan@susmangodfrey.com
                                              Jordan Rux
                                                 Texas State Bar No. 24106380
                                                 jrux@susmangodfrey.com
                                              **SUSMAN GODFREY L.L.P.**
                                              1900 Avenue of the Stars, Suite 1400
                                              Los Angeles, CA 90067
                                              Telephone: (310) 789-3100
                                              Facsimile: (310) 789-3150

Daniel J. Shih
    Washington State Bar No. 37999
    dshih@susmangodfrey.com
**SUSMAN GODFREY L.L.P.**
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883

Y. Gloria Park
    New York State Bar No. 5477047
    gpark@susmangodfrey.com
William J. Melsheimer
    Texas State Bar No. 24126417
    jmelsheimer@susmangodfrey.com
**SUSMAN GODFREY L.L.P.**
One Manhattan West, 50th Floor
New York, NY 10001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

Andrea L. Fair
    Texas State Bar No. 24078488
    andrea@millerfairhenry.com
**MILLER, FAIR HENRY, PLLC**
1507 Bill Owens Parkway
Longview, TX 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

**ATTORNEYS FOR PLAINTIFF**
**PEGASUS WIRELESS INNOVATION LLC**